In re:  **MISSOURI DIVISION OF FAMILY SERVICES,** Appellant,

v.

**George WILSON, Respondent.**

**No. WD 46028.**

Missouri Court of Appeals, Western District.

Jan. 26, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1993.

Application to Transfer Denied April 20, 1993.

Linda Ray–McKenna, Jefferson City, for appellant.

Edward F. Ford III, Kansas City, for respondent.

Before FENNER, P.J., and TURNAGE and SPINDEN, JJ.

SPINDEN, Judge.

The director of the Division of Family Services (DFS) concluded that George Wilson was not eligible for Medicaid benefits. The trial court disagreed and reversed the director's decision, and DFS appeals. We affirm the judgment of the circuit court.

DFS decided that Wilson was ineligible because he is the beneficiary of a trust established for him by his former employer, Carolyn Miller. The trust agreement states the reason for Miller's creating the trust:

> [F]or many years George H. Wilson of Kansas City, Missouri has been employed by [Miller] and also by [Miller's] deceased husband, Van Roy Miller, but is now approaching an age when he will no longer be able to work and is apprehensive as to means for the support of himself and his wife in the event of such disability; and in appreciation of this long and faithful period of service and to dispel any of such apprehensions, [Miller] wishes to provide for said George H. Wilson and his wife, Hazel Wilson, an income adequate for their needs as long as they shall live, and in order to accomplish this wishes [sic] to establish a trust for their benefit as hereinafter provided[.]

Miller funded the trust with a one-time payment of $90,000. The trust agreement mandated:

[T]he Trustee shall pay and distribute to ... Wilson a pension at the rate of $5,200.00 per year, to be paid in monthly installments of $433.33 each month, from the income of the trust to the extent its income is available for that purpose, or from corpus to the extent the income is insufficient. Such payments shall continue as long as ... Wilson shall live; and if he shall be survived by his wife, Hazel Wilson, then from and after his death payments at the same rate shall thereafter be made to his wife, Hazel Wilson, as long as she shall live.

. . . .

... If at any time or from time to time, in the sole discretion of the Trustee, the aggregate of the payments to George H. Wilson or Hazel Wilson hereunder and the funds available ˙from all other sources should be insufficient to provide adequately for the support, maintenance and health of said beneficiaries or their funeral expenses in the event of the death of either of them, the Trustee may pay to either of them or expend for the purposes mentioned such sum or sums out of the income, if available, or out of the corpus of the trust estate as the Trustee, in its sole discretion shall deem advisable for such purpose.

The trust terminates on the death of Wilson and his wife and the corpus and any undistributed income is to be distributed to Miller's three daughters.

On June 8, 1990, Wilson applied for Medicaid benefits. DFS' director deemed Wilson ineligible for benefits because the trust principal put Wilson's available resources above the statutory maximum. Section 208.100.5, RSMo 1986, directs that we review the trial court's reversal of this decision pursuant to § 536.140, RSMo 1986. DFS contends that the trial court's reversal was unauthorized by law. Section 536.140.-2(4). In particular, DFS asserts that its determination was based upon its interpretation of *Tidrow v. Director, Missouri State Division of Family Services,* 688 S.W.2d 9 (Mo.App.1985), and as such was authorized by law.

■ We disagree. "Our review of a question of law is not in any way restricted or controlled by the agency's decision." *Estate of Wallace v. Director, Missouri State Division of Family Services,* 628 S.W.2d 388, 389 (Mo.App.1982).

■ The purpose of the Medicaid program is to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care. *Couch v. Director, Missouri State Division of Family Services,* 795 S.W.2d 91, 93 (Mo.App.1990). The legislature did not intend for the Medicaid program to replace other means which provide assistance for these needy persons. As stated in § 208.153.1, RSMo Supp.1990:

The benefits available under these sections shall not replace those provided under other federal or state law or under other contractual or legal entitlements of the persons receiving them, and all persons shall be required to apply for and utilize all benefits available to them and to pursue all causes of action to which they are entitled.

In determining a claimant's eligibility, DFS must consider the claimant's circumstances, "including his living conditions, earning capacity, income and resources, from whatever source received[.]" Section 208.010.1. Unmarried individuals who have $1000 or more in resources and married couples who have more than $2,000 in resources are not eligible for Medicaid benefits. Section 208.010.2(4).

■ Federal law governs Missouri's participation in the Medicaid program. *Couch,* 795 S.W.2d at 93. The Medicaid Act requires states to base their assessments of applicants' financial need only on resources available to an applicant:

A state plan for medical assistance must ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the [Secretary of Health and Human Services], available to the applicant or recipient[.]

42 U.S.C. § 1396a(a)(17)(B). Federal regulations state, "[R]esources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." 45 C.F.R. § 233.20(a)(3)(ii)(D).

The only issue before us is whether the trust assets should be deemed a financial resource in considering Wilson's eligibility for Medicaid benefits. Whether assets of a trust are "available" depends on the settlor's intent. "[T]he intention of the settlor is the key to the construction of a trust." *Tidrow*, 688 S.W.2d at 12. Wilson acknowledges the $433.33 a month pension payment as an available resource, but he contends that the discretionary funds for his support, maintenance, and health should not be considered available resources. We agree.

Our decision is guided by the decision of this court's Eastern Division in *Tidrow*. In that case, the court examined a claimant's eligibility for Medicaid in light of his interest as a beneficiary of a trust. The settlor had established a trust for his adult son. The trust was discretionary; it authorized, but did not require, the trustee to pay from the trust funds any amount the trustee deemed necessary to provide for the son's reasonable comfort. The trust did not require payment of any amount at any time to any beneficiary. The trust was a true spendthrift trust. The beneficiary could not alienate his interest in the trust, and creditors of the beneficiary could not reach the beneficiary's interest. *Id.* at 11–12.

The *Tidrow* court concluded the beneficiary was eligible for Medicaid benefits notwithstanding the trust. The court reasoned that the settlor intended trust payments to supplement, not supplant, the benefits to which his son would be entitled. The court observed that if the settlor were alive, he would not have to deplete all his assets before his son could qualify for Medicaid benefits. The court noted the references in the trust to "lifetime" and "for so long as he may live" and noted that the trust provided that upon the son's death the remaining assets would be paid to his other son or his descendants. The *Tidrow* court decided that such language indicated the settlor's intent that the trust continue throughout his son's life and that the trust payments would be supplementary to any other financial support. *Id.* at 12. The court also concluded that because the trust funds were dispersed only at the trustee's discretion, the funds were not available to the son. *Id.* at 13.

Neither the settlor in *Tidrow* nor Miller had a legal obligation to provide for their respective trust beneficiaries. Each intended for their trusts to be used for the beneficiary's lifetime, and both anticipated that the trust corpus would be available for remaindermen. Both provided the trustees with discretionary powers over the trust funds.

We conclude that DFS should not have considered Miller's trust in determining Wilson's eligibility for Medicaid benefits. Miller intended the trust funds to supplement, not supplant, other financial support for Wilson as evidenced by the trust's prohibiting the trustee from making any payments to Wilson until funds from all other sources were insufficient to provide for Wilson's support, maintenance and health.

DFS distinguishes *Tidrow* on the ground that the *Tidrow* court relied on a spendthrift clause as evidence of the settlor's intent to supplement, not replace, state aid. The spendthrift clause was significant in *Tidrow* as evidence of the settlor's intent to supplement state aid. It was not a requisite to the result. We discern the same intent in Miller's trust from the language noted above.

For these reasons, we affirm the judgment of the trial court.

All concur.