EDWARD R. ARDINI, JR., JUDGE
*192 Daniel and Bobby Atkinson ("Appellants") brought this will contest in the Circuit Court of Johnson County[1] challenging the rejection by the probate division of one of four purported last wills and testaments of Bertha Don Carlos ("Mrs. Don Carlos"). The circuit court granted summary judgment in favor of Mrs. Don Carlos's adopted daughter, Sheryl Firuccia ("Firuccia"), holding that Appellants' claims were barred by res judicata based on a judgment entered in an earlier will contest that found Mrs. Don Carlos died intestate. This appeal follows. The judgment of the circuit court is affirmed.
FACTUAL AND PROCEDURAL BACKGROUND[2]
Mrs. Don Carlos died in September 2009 and left behind an adopted daughter and several extended family members. In March 2010, the probate division issued letters to the public administrator to administer the estate intestate. The next week, the first publication of notice granting letters on the estate occurred. In the following months, family members presented to the probate division four last wills and testaments purportedly executed by Mrs. Don Carlos. These wills were dated in June 1991, April 2003, February 2007, and August 2007. Each will contained a provision disinheriting Mrs. Don Carlos's adopted daughter, Firuccia, and devised Mrs. Don Carlos's property to other extended family members. Those family members included nephew Donald Atkinson and his three sons, Russell Atkinson, Daniel Atkinson, and Bobby Atkinson (collectively "the Atkinsons"); nephew Lyle Quick, nephew Glen Riffle, and niece Lena Zvacek (collectively "the Quicks"); sister-in-law Mary Ella Anderson and her children, Richard Anderson and Debbie Anderson Kvasnicka (collectively "the Andersons"); and nephew Donald Riffle and niece Rosella Keck.
The August 2007 Will was the first to be presented for probate, and it was admitted. The June 1991 Will was the next to be presented; it was rejected. Donald Riffle then filed a petition with the probate division requesting the August 2007 Will "be declared revoked and the order admitting said purported will to probate be vacated" and requesting the February 2007 Will be admitted to probate. Finally, Daniel Atkinson filed a petition requesting the April 2003 Will be admitted if the August 2007 Will was rejected. The probate division took no action regarding these petitions.
Meanwhile, Firuccia and the Quicks filed separate petitions under section 473.083[3] with the circuit court contesting the validity *193 of the August 2007 Will and requesting a finding that Mrs. Don Carlos died intestate. The Atkinsons and the Andersons filed answers denying the invalidity of the August 2007 Will. The Andersons also filed a counterclaim/cross-claim requesting that the circuit court admit the previously rejected June 1991 Will or, alternatively, the April 2003 Will that was pending before the probate division.
The circuit court determined that the challenge to the probate division's rejection of the June 1991 Will was untimely, rendering that rejection final. The parties then stipulated that the August 2007 Will was not "the last will and testament of Mrs. Don Carlos."
In response to the elimination of the June 1991 and August 2007 Wills, and there being no other wills before the circuit court, Firuccia moved for summary judgment on her claim that Mrs. Don Carlos died intestate. The Atkinsons opposed the motion, arguing the April 2003 and February 2007 Wills were still pending before the probate division creating a genuine issue of material fact on the question of whether Mrs. Don Carlos died intestate. The circuit court disagreed, noting that the issues presented in a will contest are framed by the petition and answer and that those wills had not been brought before the court in the will contest. The circuit court granted the motion and entered judgment finding that Mrs. Don Carlos died intestate.
The circuit court's judgment was affirmed by this Court in Quick v. Anderson , 503 S.W.3d 242 (Mo. App. W.D. 2016).
Subsequent Will Contest
Following this Court's affirmance of the judgment finding that Mrs. Don Carlos died intestate, activity was re-initiated in the probate division regarding the April 2003 Will. The probate division found, after conducting an evidentiary hearing, that the April 2003 Will was destroyed at Mrs. Don Carlos's direction when she executed the February 2007 Will and that there was insufficient evidence that Mrs. Don Carlos lacked testamentary capacity or was susceptible to undue influence when she did so. As a result, the April 2003 Will was rejected.[4]
The next month, Appellants filed a new will contest in the circuit court challenging the probate division's rejection of the April 2003 Will. Firuccia (among others) answered, alleging as an affirmative defense that res judicata barred Appellants' claims. Firuccia moved for summary judgment arguing that Appellants were seeking a finding that Mrs. Don Carlos did not die intestate; that in the earlier will contest, Firuccia had sought a finding that Mrs. Don Carlos died intestate; that Appellants were parties to that earlier will contest; and that the earlier will contest resulted in a final judgment on the merits that Mrs. Don Carlos died intestate. Appellants replied, asserting that res judicata was inapplicable because this will contest concerned the validity of the timely presented April 2003 Will, a claim that had not been addressed in the earlier litigation. The circuit court denied the motion, finding that "there [were] genuine issues of material fact."
Firuccia filed a motion for reconsideration, reiterating that res judicata applied to "every point properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." Appellants opposed the motion, arguing that the April 2003 Will could not *194 have been brought before the circuit court in the previous proceedings because, at the time, it had not yet been admitted or rejected by the probate division. The circuit court granted Firuccia's motion to reconsider and entered summary judgment against Appellants. This appeal followed.
STANDARD OF REVIEW
Appellants argue that the circuit court erred in granting Firuccia's motion for summary judgment. Our review of "the grant of summary judgment [is] de novo. " White v. Emmanuel Baptist Church , 519 S.W.3d 917, 921 (Mo. App. W.D. 2017). The moving party is entitled to summary judgment if it "establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." Id. One of the ways in which "[a] defending party may establish a right to summary judgment [is] by showing ... that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." Id.
DISCUSSION
Will Contests
To facilitate our discussion, we provide a brief overview of the procedures for admitting a will to probate and for contesting the admission or rejection of a will before the circuit court.
"A will, to be effective as a will, must be presented for and admitted to probate." § 473.050.1. Any interested person who "contests the validity of a probated will[ ] or prays to have a will probated which has been rejected by the probate division" must do so before the circuit court within six months of the will's admission or rejection (or "the first publication of notice of granting of letters on the estate of the decedent, whichever is later"). § 473.083.1. "[T]he purpose of such a proceeding is to determine whether there is a will or not[.]" Anderson v. Wittmeyer , 834 S.W.2d 780, 784 (Mo. App. W.D. 1992).
A will contest must "be exercised in strict compliance with the statutory provisions." Quick , 503 S.W.3d at 251. The petition and answers thereto "frame the issues of intestacy or testacy or which writing or writings constitute the decedent's will." § 473.083.7. "[T]he opponent of a will may choose to challenge the validity of the purported will and also attempt to establish another will in its place." Quick , 503 S.W.3d at 251. The court is required not "to establish all wills" but to "decide the issues framed by the petition and answer." Id. at 251-52. The circuit court's judgment "shall determine the issues ... [and] is final[.]" § 473.083.7.
Res Judicata Bars Appellants' Subsequent Will Contest
Res judicata bars the same parties from re-litigating a claim that has been previously decided on the merits by a final judgment, or from later raising a claim "stemming from the same set of facts" that could have been raised in the first suit.[5]
*195 Johnson Controls, Inc. v. Trimmer , 466 S.W.3d 585, 591 (Mo. App. W.D. 2015). "The doctrine precludes not only those issues on which the court in the former case was required to pronounce judgment, but [ ] every point properly belonging to the subject matter of the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." Chesterfield Village, Inc. v. City of Chesterfield , 64 S.W.3d 315, 318 (Mo. banc 2002). A corollary of res judicata is that parties cannot collaterally attack the merits of a final judgment entered in a previous proceeding. See Wright v. Bartimus Frickleton Robertson & Gorny PC , 364 S.W.3d 558, 564 (Mo. App. W.D. 2011) (the doctrine of res judicata "includes within its ambit ... a prohibition against collateral attack on a judgment."); see also Moore v. Moore , 484 S.W.3d 386, 391 (Mo. App. W.D. 2016) ("nothing is better settled than the principle that an erroneous judgment has the same res judicata effect as a correct one.").
Appellants initiated this will contest for the purpose of establishing that the April 2003 Will-rejected by the probate division-was Mrs. Don Carlos's last will and testament. Indeed, that is the purpose of a will contest. See § 473.083.7 (A will contest determines "intestacy or testacy or which writing or writings constitute the decedent's will."). However, the ability of Appellants to now litigate the validity of the April 2003 Will is not without limitation and, relevant to this appeal, does not extend to collaterally attacking the judgment entered in the earlier will contest. See Bugg v. Rutter , 466 S.W.3d 596, 602 (Mo. App. W.D. 2015) ("A judgment ... is not open to collateral attack in respects of its validity or conclusiveness of the matters adjudicated."). The circuit court concluded that the previous judgment of intestacy barred pursuit of this will contest under the doctrine of res judicata. We agree.
The judgment entered in the initial will contest concluded that Mrs. Don Carlos died intestate, i.e., without a valid will. See In re Rogers' Estate , 250 S.W. 576, 578 (Mo. 1923) ("The very meaning of the word 'intestate' is the absence of a will."); Restatement (Third) of Property: Wills & Other Donative Transfers § 2.1 (1998) ("A decedent who dies without a valid will dies intestate.").[6] Appellants were parties to that litigation and actively opposed that finding in the circuit court and before this Court on appeal. See Quick , 503 S.W.3d at 247, 251. Those efforts failed and the judgment of intestacy became final. See § 473.083.7 (a circuit court judgment of intestacy "is final."). Appellants now seek a determination that the April 2003 Will was the last will and testament of Mrs. Don Carlos-a finding that would be tantamount to vacating the judgment of intestacy entered in the previous will contest and affirmed by this Court.[7] Such a result would clearly constitute *196 an impermissible collateral attack on a final judgment and is barred by the doctrine of res judicata. See Moore , 484 S.W.3d at 391-92 (holding that a later lawsuit in which the husband tried to revisit an issue decided in the final divorce decree was an impermissible collateral attack on the judgment and was barred by res judicata ).
Appellants nevertheless argue that the prior declaration of intestacy is no impediment to this will contest. They contend that res judicata only precludes re-litigation of claims that were brought or could have been brought in a previous action, and their "claim," concerning the April 2003 Will, could not have been raised in the first will contest because the April 2003 Will had not yet been admitted or rejected by the probate division.
In the context of res judicata , what constitutes a "claim" is broadly construed in order to protect parties from defending multiple lawsuits. See Johnson Controls , 466 S.W.3d at 593 ; see also King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints , 821 S.W.2d 495, 501 (Mo. banc 1991). Appellants, however, urge a more narrow approach, arguing that the first will contest only involved the validity of the June 1991 Will and August 2007 Will while the present contest involves the validity of the separate and distinct April 2003 Will. This effort to recast the initial will contest as simply an examination of two purported wills in a vacuum mischaracterizes the scope of that litigation and our holding in Quick .
As discussed above, the first will contest specifically encompassed and, more importantly, resolved the claim that Mrs. Don Carlos died intestate. See § 473.083.7. Although Appellants now fervently argue the validity of the April 2003 Will, it is notable that they made no effort during the almost five-year pendency of the initial will contest to urge action by the probate division on that will or to otherwise bring that will before the circuit court.[8] Instead, their legal position then was that the August 2007 Will was the last will and testament of Mrs. Don Carlos but, if that will was deemed invalid, then the distribution of the estate should be governed by the February *197 1991 Will. See Quick , 503 S.W.3d at 252.[9] This strategy failed as those wills were deemed rejected or withdrawn by the parties, permitting the circuit court to adjudge that Mrs. Don Carlos died intestate as a matter of law - a judgment that was affirmed by this Court. While Appellants now seek to proffer a new legal theory as to Mrs. Don Carlos's testamentary status at death (that the April 2003 Will was her last will and testament), "[s]eparate legal theories are not to be considered as separate claims." King Gen. Contractors, Inc. , 821 S.W.2d at 501.
CONCLUSION
Appellants' will contest seeking a determination that the April 2003 Will was Mrs. Don Carlos's last will and testament is a collateral attack on the final judgment entered in the initial will contest declaring that she died intestate, and is barred by the doctrine of res judicata. The judgment of the circuit court is affirmed.
All concur.

Upon Appellants' application for a change of venue, this will contest was transferred to Cass County.

We borrow facts from the related appeal, Quick v. Anderson , 503 S.W.3d 242 (Mo. App. W.D. 2016), without further attribution.

All statutory references are to the Revised Statutes of Missouri 2000 as supplemented through August 27, 2016.

At a January 10, 2017, hearing before the probate division, the proponent of the February 2007 Will withdrew the request to admit that will to probate.

In determining whether res judicata applies, courts commonly examine whether the lawsuits at issue share four "identities": "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) [ ] identity of the quality of the person for or against whom the claim is made." See Roy v. MBW Constr., Inc. , 489 S.W.3d 299, 304 (Mo. App. W.D. 2016). As explained, we find that res judicata bars this action because it attempts to collaterally attack a previously entered final judgment. We, therefore, do not specifically address the four identities in our analysis. See Wright v. Bartimus Frickleton Robertson & Gorny PC , 364 S.W.3d 558, 564 (Mo. App. W.D. 2011) (finding it unnecessary to address the four identities because the issue on appeal involved a collateral attack on the judgment); see also Moore v. Moore , 484 S.W.3d 386, 391-92 (Mo. App. W.D. 2016).

Missouri follows the Third Restatement of Property. See Denny v. Regions Bank , 527 S.W.3d 920, 925-26 (Mo. App. S.D. 2017).

Appellants argue that the judgment of intestacy entered in the first will contest was simply a "default" finding made "at the time" and subject to being revisited later should other timely presented wills of Mrs. Don Carlos be admitted to probate. We are not persuaded to adopt this characterization. Acceptance of Appellants' view that the judgment of intestacy was simply a placeholder with no preclusive impact and subject to later revision would have rendered it, in effect, interlocutory and not a final judgment. This position is inconsistent with section 473.083.7 and finds no support in this Court's opinion in Quick .

Appellants could have brought the April 2003 Will before the circuit court prior to the probate division taking action on it. See, e.g. , Kleim v. Sansone , 248 S.W.3d 599, 602 (Mo. banc 2008) (finding a premature filing of a will contest does not deprive the circuit court of jurisdiction, and "the circuit court should have held the prematurely filed petition for consideration until after the probate division admitted the will to probate."); Lopiccolo v. Semar , 890 S.W.2d 754, 756-57 (Mo. App. E.D. 1995) (affirming a circuit court judgment finding the court had jurisdiction to resolve a will contest even though the petition initiating the will contest in the circuit court had been filed before the probate division accepted or rejected the will). Had Appellants filed a petition with the circuit court concerning the April 2003 Will during the pendency of the first will contest, the circuit court would have been required to hold that petition pending action by the probate division. See Kleim , 248 S.W.3d at 602. While Appellants argue that the filing of such a petition would have had no impact on the outcome of the first will contest because the circuit court would have simply held the petition in abeyance, we disagree. The filing of such a petition would have placed the April 2003 Will before the circuit court, and it was the failure to place that will before the circuit court which formed the basis for the granting of summary judgment and declaring Mrs. Don Carlos's died intestate in the first will contest. See Quick , 503 S.W.3d at 247-48 (the circuit court granted summary judgment and declared Mrs. Don Carlos died intestate because "the Atkinson Appellants did not place the validity of the purported lost or destroyed 2003 will before the court," and "there were no other purported wills before the court").

Although Appellants filed an answer to the Andersons' counterclaim/cross-claim admitting the allegations contained therein, which included an allegation that the 2003 Will be admitted if the 1991 Will was not, "the 2003 will was never raised again." Quick , 503 S.W.3d at 252 n.4.